# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3320
_____

Ronald Weaver

*Petitioner - Appellee*

v.

United States of America

*Respondent - Appellant*

_____

No. 13-3321
_____

Ronald Weaver

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeals from United States District Court
for the Northern District of Iowa - Sioux City

_____

# Exhibit #1

Submitted: April 13, 2015
Filed: July 16, 2015

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

A jury convicted Ronald Weaver of conspiracy to manufacture and distribute and possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. After we denied Weaver relief on direct appeal, see United States v. Weaver, 554 F.3d 718, 719 (8th Cir. 2009), Weaver moved to vacate his sentence under 28 U.S.C. § 2255(a). Concluding Weaver's sentencing counsel was ineffective by failing to move for a new trial before sentencing, the district court vacated Weaver's conviction and ordered a new trial. The government appeals, and Weaver cross-appeals the district court's denial of two claims of ineffective assistance of trial counsel. We affirm the district court's denial of Weaver's motion on the two alternative grounds, but we reverse the district court's order vacating Weaver's conviction.[1]

I.   BACKGROUND

On October 24, 2006, in a second superseding indictment, a federal grand jury charged Weaver and co-defendants Carvell England and Jamale Key, among others, with crack-cocaine conspiracy and possession crimes. England pled guilty on April 17, 2007, and Key pled guilty on April 19, 2007. Of six co-defendants, only Weaver proceeded to trial beginning April 24, 2007, and a jury found him guilty on both charged counts. Weaver filed a motion for a new trial, which the district court

---

[1]We have appellate jurisdiction under 28 U.S.C. § 1291. See also 28 U.S.C. § 2253(a).

-2-

Exhibit #1
Case 5:10-cv-04091-MWB-LTS   Document 78   Filed 07/16/15   Page 2 of 14
Appellate Case: 13-3320   Page: 2   Date Filed: 07/16/2015 Entry ID: 4295805

denied. Weaver's trial counsel, Chad Primmer, then moved to withdraw as attorney. The district court granted the motion and appointed Stuart Dornan to represent Weaver for sentencing.

The district court convened Weaver's sentencing hearing on June 2, 2008, after co-defendants England and Key already had been sentenced. Although neither England, Weaver's "godbrother," nor Key, Weaver's cousin, testified at Weaver's jury trial, both testified on Weaver's behalf at his sentencing hearing. England testified, in effect, that Weaver had nothing to do with the crimes charged against him. Key similarly testified Weaver was not involved in the charged conspiracy and distribution conduct. The district court sentenced Weaver to 300 months imprisonment on each of the two counts, to run concurrently.

After his unsuccessful direct appeal, Weaver moved to vacate his sentence under 28 U.S.C. § 2255(a), claiming, among other things, ineffective assistance of trial counsel. The district court heard argument on the motion on April 18-19, 2012, and then ordered supplemental briefing to address "whether [Weaver] is entitled to relief on a claim of ineffective assistance of counsel in relation to Attorney Stuart Dornan's potential failure to file a motion for a new trial at or prior to sentencing based on his knowledge that Carvell England and Jamale Key were then willing to testify." The district court heard further argument on August 6, 2012.

The district court denied Weaver's § 2255 claims as to trial counsel Primmer, but found sentencing counsel "Dornan provided ineffective assistance of counsel by failing to file a [second] Motion for a New Trial," which the district court stated it "would have granted" to allow Weaver to call England and Key as exculpating witnesses. The district court decided Weaver was "now entitled to a new trial" and entered judgment in Weaver's favor, vacating Weaver's conviction. The government appealed, and Weaver cross-appealed. The district court granted a certificate of

-3-

Exhibit #1
Case 5:10-cv-04091-MWB-LTS   Document 78   Filed 07/16/15   Page 3 of 14
Appellate Case: 13-3320     Page: 3     Date Filed: 07/16/2015 Entry ID: 4295805

appealability to Weaver[2] on his claims of ineffective assistance of trial counsel, among other things.

## II.   DISCUSSION

We evaluate a claim of ineffective assistance of both trial counsel and sentencing counsel by following the standard articulated in Strickland v. Washington, 466 U.S. 668, 671, 687 (1984).  See, e.g., Theus v. United States, 611 F.3d 441, 446 (8th Cir. 2010).  To succeed, Weaver "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  Strickland, 466 U.S. at 687.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  Id. at 688.  We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  And "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Id. at 690.  "We review [Weaver's] ineffective assistance claim[s] de novo and review the district court's factual findings for clear error."  Scott v. United States, 473 F.3d 1262, 1263 (8th Cir. 2007).

### A.   Trial Counsel
#### 1.   England and Key

Weaver alleges the district court erred by not finding trial counsel Primmer ineffective for "fail[ing] to determine whether Mr. Key and Mr. England were willing to testify" at trial "on Mr. Weaver's behalf."  Weaver submitted affidavits signed in 2010 by England and Key, each of whom stated he willingly would have testified at trial, but Primmer had not contacted him or his lawyer about the matter.

---

[2]The government did not need a certificate of appealability to bring this appeal. See Fed. R. App. P. 22(b)(3).

-4-

At the § 2255 hearing, Primmer testified that before trial, Weaver told Primmer "the codefendants in this matter would like to testify on his behalf." So on April 20, 2007, after England and Key had pled guilty and before Weaver's trial, Primmer contacted Matthew Metzgar, England's attorney, and Joseph Flannery, Key's attorney, by email—because "[e]thically if somebody's represented by a lawyer, [Primmer had] to first speak to their lawyer." In the email, with subject heading "Ronald Weaver," Primmer stated,

> I was notified by my client yesterday afternoon that some or all of your clients wish to testify on his behalf at his trial starting next week. I am not going to speak with any of your clients without permission. Could each of you comment on whether or not there is any accuracy to this or if I have permission to contact your client.

That same day, Primmer filed an "Application for Maintenance of Prisoners" with the district court, stating Weaver told Primmer that England and Key wanted to testify on Weaver's behalf and requesting England and Key be available to testify at trial on April 24, 2007. The district court ordered that both potential witnesses be available during the trial.

Primmer testified that his "recollection is that at least one lawyer called [him] back and was adamant that his client wanted nothing to do with it and that [the lawyer] didn't want to expose his client to obstruction of justice or perjury or other further harm than they already were facing," and that none of the lawyers "indicated that their client was willing to testify." Specifically, Primmer testified he met with Metzgar at the courthouse during Weaver's trial, and Metzgar told Primmer that England "wasn't willing to testify." Similarly, Primmer stated Flannery informed Primmer in a phone call that Key would not testify. In both instances, Primmer stated he could "rely on [Metzgar's and Flannery's] professional representation[s] to [him]," and Primmer did not believe Metzgar and Flannery were lying because they were "honest people."

-5-

Exhibit #1
Case 5:10-cv-04091-MWB-LTS   Document 78   Filed 07/16/15   Page 5 of 14
Appellate Case: 13-3320   Page: 5   Date Filed: 07/16/2015 Entry ID: 4295805

Primer further testified the lawyers' responses to his email were commensurate with his experience as a defense lawyer, because "if you object to particular relevant conduct in your presentence report or if you testify in a manner that the court deems isn't correct, you could lose acceptance of responsibility [credit at sentencing]. You could face obstruction of justice. Or you could face another separate indictment for . . . perjury." Primmer concluded that for the testifying witness, "a bad situation gets very bad. . . . [A]lmost nothing good can come of it." Nevertheless, Primmer stated "if either [England or Key] were willing to come into court and testify for Mr. Weaver, [Primmer] absolutely would have called them."

Metzgar testified he advised England not to testify at Weaver's trial, and after that discussion "[England] wasn't going to speak to Mr. Primmer." Metzgar testified England did not tell him England wanted to testify on Weaver's behalf. Flannery explained he advised Key not to testify for any proceeding, in part because of possible questions about an unrelated murder case. Flannery stated that he and Key "both agreed that he should not talk to anyone" because things "could have gotten a lot worse for [Key]." Flannery stated he communicated this to Primmer by telephone. Primmer took these refusals to mean that England and Key would invoke their Fifth Amendment right against self-incrimination should they be called to the witness stand.

As the district court observed, Primmer did exactly what Weaver requested him to do—he investigated the possibility of England and Key testifying at trial. Primmer filed the application with the court to ensure England and Key, both prisoners, would be available to testify. Primmer emailed England's and Key's attorneys to inquire whether they would testify. Neither attorney responded positively to Primmer's email.

But Weaver suggests Primmer should have subpoenaed England and Key and then interviewed them outside the presence of the jury pursuant to Federal Rule of

-6-

Evidence 104(a), (c) as to whether each intended to invoke his Fifth Amendment right against self-incrimination.[3]  See United States v. Campbell, 410 F.3d 456, 463 (8th Cir. 2005) (describing such a procedure). This would have required Primmer to doubt Metzgar's and Flannery's representations that their clients refused to testify, which Primmer himself believed was the reasonable course to take, because "nothing good [could] come of it" for England or Key.  Weaver fails to rebut the "strong presumption," Strickland, 466 U.S. at 689, that Primmer acted reasonably when he investigated England's and Key's availability, was rebuffed by each co-defendant's attorney, and in fact believed both England and Key had refused to testify for Weaver. Primmer made "strategic choices" based on "reasonable professional judgments support[ing] the limitations on investigation" and fulfilled his "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 690-91.

### 2.    18 U.S.C. § 3161(c)(2) Writing Requirement

Weaver initially appeared and was arraigned on a second superseding indictment on April 13, 2007. At that time, trial for Weaver's co-defendants, who

---

[3]Weaver cites United States v. Lofton, 333 F.3d 874, 875-76 (8th Cir. 2003), in support of his argument, where we noted defendant Lofton "could have called [a co-defendant] as a defense witness at trial" when, after trial, the co-defendant claimed he would have testified favorably in Lofton's behalf. Lofton is inapposite in this context, because in Lofton, there was no indication that at the time of trial the co-defendant had stated through counsel he would not testify, whereas here, Primmer had every reason to believe from their legal counsel that England and Key had refused to testify. See id. Weaver also contends "Primmer apparently did not know that he could determine the invocation of the 5th Amendment outside the presence of the jury." This contention is refuted by Primmer's testimony that he "would have done that" "if [he] thought [either] lawyer was lying to [him]" and while such a procedure is possible, he "also [could] rely on [Metzgar's and Flannery's] professional representation[s] to [him]."

-7-

Exhibit #1
Case 5:10-cv-04091-MWB-LTS   Document 78   Filed 07/16/15   Page 7 of 14
Appellate Case: 13-3320   Page: 7   Date Filed: 07/16/2015 Entry ID: 4295805

eventually pled guilty, was set to begin ten days later on April 23, 2007.[4]  At the arraignment, trial counsel Primmer assured the magistrate judge that Weaver wanted to go ahead with the April 23 trial date.  The magistrate judge asked Primmer if he had "been involved in this case already," to which Primmer replied,

> I've been representing Mr. Weaver for some time on matters both relating to this as well as his pending indictment in the Southern District of Iowa in Des Moines.  This case was previously a state case.  I have had access through Mr. Weaver of all copies of state discovery materials and state depositions [and] the U.S. Attorney's Office in Sioux City and [the assistant U.S. Attorney] have previously made available all discovery materials in this particular case.

The following colloquy ensued:

> THE COURT:        Mr. Weaver, . . . do you understand that you have the right to insist on more time to get ready for trial if you want?
>
> THE DEFENDANT:    Yes, sir.
>
> THE COURT:        And is it correct that you wish to go ahead on the April 23rd date as scheduled?
>
> THE DEFENDANT:    Yes, sir.

Weaver now alleges trial counsel Primmer rendered ineffective assistance by "fail[ing] to object to Mr. Weaver's oral waiver [of] his right to have [thirty] days to prepare for trial."  See 18 U.S.C. § 3161(c)(2) ("Unless the defendant consents *in writing* to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel."  (emphasis added)).  Weaver's oral waiver did not comport with the plain requirements of § 3161(c)(2).

---

[4] The trial date was soon changed to April 24, 2007.

Exhibit #1
Case 5:10-cv-04091-MWB-LTS   Document 78   Filed 07/16/15   Page 8 of 14
Appellate Case: 13-3320   Page: 8   Date Filed: 07/16/2015 Entry ID: 4295805

Assuming without deciding Primmer's failure to object, despite Weaver's explicit oral waiver, amounted to deficient performance under Strickland, we look to see if Weaver was prejudiced by any such deficiency. See Strickland, 466 U.S. at 687.

Weaver alleges prejudice due to the short time span between arraignment and trial, contending that additional preparation time would have allowed Primmer "to research and identify the proper procedure for determining whether Mr. Key and Mr. England would have testified on Mr. Weaver's behalf. If [Primmer] had done so, . . . Mr. Weaver would have been acquitted." We note Key was sentenced in September 2007 and England was sentenced in November 2007, so a continuance extending the trial date to thirty days past Weaver's initial appearance in April 2007 still would have resulted in a trial occurring before each co-defendant's sentencing hearing, with the same risks to each co-defendant if either decided to testify. In addition, as the district court noted, "it is clear from the record that Mr. Primmer was more familiar with the file than the U.S. attorney (because he had previously [represented] Mr. Weaver) and decided to leverage his superior knowledge of the case by quickly proceeding to trial."

As previously described, Primmer followed a reasonable procedure for investigating England's and Key's willingness to testify. Weaver has not established he was prejudiced by the lack of a written waiver of the thirty-day § 3161(c)(2) requirement, because Weaver has not shown any additional time allotted for trial preparation would have changed Primmer's reasonable trial strategy or otherwise affected his effectiveness. Because Weaver has not "met the burden of showing that the decision reached would reasonably likely have been different absent the error[]," Strickland, 466 U.S. at 696, he has not proven a claim of ineffective assistance due to lack of compliance with § 3161(c)(2).

-9-

Exhibit #1
Case 5:10-cv-04091-MWB-LTS   Document 78   Filed 07/16/15   Page 9 of 14
Appellate Case: 13-3320     Page: 9      Date Filed: 07/16/2015 Entry ID: 4295805

### B. Sentencing Counsel

Weaver successfully argued in the district court that sentencing counsel Dornan failed to provide effective assistance when he did not file a second motion for a new trial. The district court faulted Dornan for not inquiring into whether England and Key would have offered exculpating testimony at Weaver's trial when Dornan knew they were willing to do so at Weaver's sentencing hearing. Weaver contends England's and Key's exculpating testimony would have amounted to "newly discovered evidence" under Federal Rule of Criminal Procedure 33(b)(1) (allowing a "motion for a new trial grounded on newly discovered evidence").

"When newly discovered evidence is the ground for a § 2255 motion, the district court should apply the same substantive test which governs a motion for a new trial under Fed. R. Crim. P. 33 premised upon the same ground." Lindhorst v. United States, 658 F.2d 598, 602 (8th Cir. 1981) (quotation omitted); see Fed. R. Crim. P. 33(a) ("Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."). "[W]here an affidavit is not available until after trial, if the factual basis for the testimony in the affidavit existed before trial, then it is not newly discovered evidence." United States v. Bell, 761 F.3d 900, 911 (8th Cir. 2014). And "'when a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a codefendant, the evidence is not newly discovered,'" Lofton, 333 F.3d at 875-76 (alteration omitted) (quoting United States v. Offutt, 736 F.2d 1199, 1202 (8th Cir. 1984) (per curiam)), "especially where the moving party knows about the involvement of that witness," Bell, 761 F.3d at 911.

-10-

Exhibit #1
Case 5:10-cv-04091-MWB-LTS   Document 78   Filed 07/16/15   Page 10 of 14
Appellate Case: 13-3320     Page: 10     Date Filed: 07/16/2015 Entry ID: 4295805

In its order vacating Weaver's sentence, the district court stated England's and Key's "attorneys told them not to testify before their sentencing."[5] The district court credited Metzgar's and Flannery's testimony as follows:

> Attorneys Joe Flannery and Matt Metzgar, who represented Mr. Key and Mr. England, respectively, also testified at the evidentiary hearing. Mr. Metzgar stated that he communicated Mr. Primmer's request to his client but that he advised his client not to testify on Mr. Weaver's behalf. Mr. Flannery stated that he told Mr. Primmer that Mr. Key would not testify on Mr. Weaver's behalf. (The Court notes that *Mr. Key and Mr. England were advised not to testify for valid, strategic reasons in their own cases, related to possible incrimination and sentencing enhancements*).

(Emphasis added). The district court further stated, "[A]ccording to Mr. Key and Mr. England, they were always willing to testify for Mr. Weaver, although their respective counsel advised against it." The district court explained,

> Based on the evidence currently before the Court, it seems clear Mr. Key and Mr. England would have told Mr. Dornan that they would have been happy to testify at trial, even though their attorneys opposed such testimony. The fact that co-conspirators were willing to testify on Mr. Weaver's behalf at trial, but did not, should have formed the basis for a Motion for a New Trial.

The record evidence does not support the district court's factual finding. England and Key testified at Weaver's sentencing hearing in 2008, submitted affidavits sworn in 2010, and testified at Weaver's § 2255 hearings in April 2012 and August 2012. Nowhere did either state he would have been willing to testify *against the advice of counsel*. Nothing in England's or Key's affidavits or testimony

---

[5] At the same time, the district court correctly pointed out "there is no evidence that Mr. Key was ever told by Mr. Flannery that Mr. Weaver wanted him to testify at trial."

-11-

indicates either knew what that advice of counsel would have been because neither admits to having spoken with his attorney about the matter.

For example, in England's 2010 affidavit, he declares, "[M]y lawyer never even had a conversation with me about [Weaver's] lawyer wanting me to testify in [Weaver's] behalf, because if he would have I would have testified in his behalf without any hesitation." Similarly, in Key's 2010 affidavit, he proclaims, "[M]y lawyer and I have never been approached with this matter, nor have we ever had such a conversation with [M]r. Weaver's lawyer pertaining to this matter, because if we would have, I would have gladly . . . testified in [M]r. Weaver's behalf." Thus both England and Key directly contradict the district court's factual finding that their attorneys told them, at the time of trial in April 2007, about the possible repercussions of testifying and both were still willing to testify and risk greater punishment. So any finding based on England's and Key's post-sentencing affidavits and testimony as to what either would have done in April 2007, before sentencing, is conjecture shaped by "the distorting effects of hindsight." Strickland, 466 U.S. at 689.

The district court's factual finding that "Mr. Key and Mr. England would have told Mr. Dornan that they would have been happy to testify at trial, even though their attorneys opposed such testimony" may well be true—they may well have told Dornan exactly that, after the potential harm to their sentencing hearings was mooted. But we cannot conclude, based on the record before us, that either would have advised his own attorney to tell Primmer the same thing in April 2007, before their sentencings.

We also note neither England nor Key credibly claims he told his counsel before trial in April 2007 he wanted to testify on Weaver's behalf, as one would

-12-

expect from the urgency of their affidavits.[6]  Rather, each says he did not discuss the matter with counsel.  This is particularly surprising for England, who knew Weaver wanted him to testify at trial—Weaver's mother relayed Weaver's request to England.  England claims he wanted to testify for Weaver "from the beginning, from the start even when the case was state" but does not explain why he never mentioned this to his lawyer.

As Dornan succinctly put it, he did not file a motion for a new trial because England's and Key's new exculpatory testimony was, at the time of the sentencing hearing in 2008, "newly available," rather than "newly discovered."  See Bell, 761 F.3d at 911 ("'Rule 33 does not authorize district courts to grant new trials on the basis of such evidence since it is not newly discovered, but merely newly available.'" (quoting United States v. Owen, 500 F.3d 83, 89 (2d Cir. 2007))).  "[W]here, as in this case, a defendant knew or should have known, that his codefendant could offer material testimony as to the defendant's role in the charged crime, the defendant cannot claim that he 'discovered' that evidence only after trial."  Owen, 500 F.3d at 91; see id. at 91-92 n.5 (stating whether testimony was deemed "newly discovered" was not dependent upon the attorney's diligence at trial to procure the testimony of a co-defendant exercising his right to avoid self-incrimination); see also United States v. Moore, 221 F.3d 1056, 1058 (8th Cir. 2000) ("Although [the defendant] argues that [his co-defendant] was an unavailable witness [at the time of trial] since he was awaiting sentencing for his role in the drug conspiracy, this court has held that 'when a defendant who has chosen not to testify subsequently comes forward to offer

---

[6]Key testified at Weaver's April § 2255 hearing that Primmer had contacted Flannery, but Flannery "didn't inform" Key and Key didn't know Weaver wanted Key to testify until after Key "fired Mr. Flannery"—Key stated three times he did not speak with Flannery about Weaver's request before Weaver's trial, and he repeated that testimony at the August § 2255 hearing.  At one point during the August § 2255 hearing, Key gave conflicting testimony that he "remember[ed] letting [his] lawyer know" he wanted to testify for Weaver, yet Key was "never called . . . to trial."

Exhibit #1

testimony exculpating a codefendant, the evidence is not newly discovered.'" (quoting United States v. Mosby, 12 F.3d 137, 138 (8th Cir. 1993) (per curiam))). Dornan reasonably did not believe he "could in good faith proceed" to seek a motion for a new trial at sentencing and did not "think ethically [he] could proceed in that fashion."

Considering the totality of the circumstances, sentencing counsel Dornan reasonably "rel[ied] upon the general rule that belated exculpatory testimony by a codefendant who did not testify at trial is not newly discovered evidence," Lofton, 333 F.3d at 876, and reasonably concluded England's and Key's silence at the time of trial and change of heart after Weaver's trial and after their sentencing hearings did not constitute newly discovered evidence. See Bell, 761 F.3d at 911; United States v. Rogers, 982 F.2d 1241, 1245 (8th Cir. 1993). We conclude the district court erred in concluding that sentencing counsel Dornan provided ineffective assistance in failing to file a second motion for a new trial.

### III. CONCLUSION

We affirm in part and reverse in part, and we reinstate Weaver's conviction and sentence.

_____

-14-

Exhibit #1

Case 5:10-cv-04091-MWB-LTS   Document 78   Filed 07/16/15   Page 14 of 14
Appellate Case: 13-3320     Page: 14     Date Filed: 07/16/2015 Entry ID: 4295805