# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.  Case No: 21-cr-579-DLF

BRANDON STRAKA,

    Defendant.

PRESS COALITION,

    Interested Party.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE PRESS COALITION'S MOTION TO UNSEAL**

Pursuant to Local Criminal Rule 57.6, the Press Coalition[1] hereby moves for the unsealing of the Addendum referenced in the Government's Sentencing Memorandum, Dkt. 36 at 14 n.7, and any related motion to seal, response thereto, or sealing order. These filings (together, the "Sealed Records") are all subject to the First Amendment and common law rights of access. The public docket provides no explanation as to why, despite the strong presumption of transparency in this Circuit, these judicial records are not available to the public. The Court should therefore grant the Press Coalition's motion for access to the Sealed Records.

---

[1] Members of the Press Coalition are Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting, Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc. Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post.

1

**I.      BACKGROUND**

This lawsuit is one of many cases arising out of the riot at the United States Capitol on January 6, 2021, an event "of deep national importance." *United States v. Munchel*, 567 F. Supp. 3d 9, 16 (D.D.C. 2021) (internal marks omitted). In this prosecution, the Court has already ordered portions of the record – specifically, video exhibits submitted by the Government in connection with its Sentencing Memorandum – released to the Press Coalition in response to its application pursuant to Standing Order No. 21-28 (BAH). *See* Jan. 21, 2022 Minute Order. The Press Coalition in this motion asks the Court, under the same law and policy governing judicial transparency, to release additional, sealed records submitted in connection with this Defendant's sentencing.

As this Court is aware, Defendant Brandon Straka, a conservative social media influencer, has admitted he "flew to Washington D.C. to speak at a rally protesting the election results on January 5 and January 6, 2021," and while there, "knowingly entered the restricted area at the U.S. Capitol Grounds . . . with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress." Statement of Offense ¶¶ 8-10, Dkt. 26. Following his entry of a guilty plea for a misdemeanor, this Court sentenced Straka to thirty-six months of probation and ordered that he pay a $5,000 fine, $500 in restitution and $10 special assessment. *See* Jan. 24, 2022 Minute Order.

In its Sentencing Memorandum, the Government refers to Defendant's voluntary interviews with the FBI and U.S. Attorney's office and represents that it will "supplement this filing with a sealed addendum that will provide this Court with information related Brandon

Straka's interviews."  Gov't's Sentencing Mem. at 14 n.7, Dkt. 36.  Neither the Addendum nor a related motion to seal currently appear on the docket for this matter.[2]

Both the Government and the Defendant quote and otherwise rely on the voluntary interviews in their filings ahead of the sentencing hearing, and the Court in fact took this into consideration when deciding to not sentence Defendant to incarceration.  *See* Jan. 24, 2022 Tr. at 43:21-44:4.  The Government states that during these interviews, Straka "described seeing people 'clustered' and 'packed in' near the entrance to the U.S. Capitol," made a number of admissions regarding his personal conduct, and "provided additional information to the FBI regarding the events leading up to and during January 6." *Id.* at 13-14; *see also id.* at 16, 19, 20.  The Government asserts that Straka's participation in these interviews "serve as a strong counter to his aggravating conduct, namely, his abuse of his responsibility as a public figure not to agitate and inflame the passions of a riotous mob." *Id.* at 16.

Straka filed a response arguing that he has "demonstrated his remorse by acknowledging his wrongdoing and by immediately agreeing to be interviewed by agents after his arrest." *See* Resp. to the Gov't's Sentencing Mem. at 11, Dkt. 41.  He also takes issue with the Government's representations of the riots based on the interviews, stating that "[d]uring the interviews the government was focused on establishing an organized conspiracy between defendant, President Donald J. Trump, and allies of the former president, to disrupt the Joint Session of Congress on January 6," yet in its Sentencing Memorandum, the Government "persists with a false narrative that defendant's actions were premeditated and orchestrated in concert with the greater mob that stormed the Capitol." *Id.* at 2.

---

[2] Notably, the only motion to seal entered on the public docket – filed at the outset to seal the complaint and arrest warrant until Straka was arrested, Dkt. 3 – has been lifted, yet a number of other filings do not appear on the docket. *E.g.,* Dkts. 19, 23, 28, 30, 31, 32, 34, 35, 37, 39.

## II. THE COURT SHOULD GRANT ACCESS TO THE SEALED RECORDS

The First Amendment and common law rights of access to judicial records are "a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). The Court should release the Sealed Records under both the First Amendment and the common law.

### A. The Court Should Release The Records Under The Constitutional Right of Access.

"The Supreme Court has sketched a two-stage process for resolving whether the First Amendment affords the public access to a particular judicial record or proceeding." *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring). "First the court must determine whether a qualified First Amendment right of public access exists. If so, then . . . the record or proceeding may be closed only if closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (internal marks and citations omitted).

Courts follow the "experience and logic" test to determine where the constitutional right of access right to records or a proceeding. *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 9 (1986). Under this test, the right of access attaches if "the place and process have historically been open to the press and general public" and if access "plays a significant positive role in the function of the particular process." *Id.* at 8. Applying this test, the constitutional right of access plainly attaches to any sealing orders. *See EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) ("A court's decrees, its judgments, its orders, are the quintessential business of the public's institutions."). Likewise, "precedent strongly favors [the] view" that the constitutional access right applies "to non-dispositive civil motions," including the other Sealed Records. *See, e.g.*, *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009);

4

*United States v. Dare*, 568 F. Supp. 2d 242, 244 (N.D.N.Y. 2008) ("It is well-recognized that the public has a strong right to sentencing memoranda under the First Amendment and the common law right to judicial records."); *see also United States v. Thompson*, 199 F. Supp. 3d 3, 9-10 (D.C. 2016) (recognizing qualified First Amendment and common law access rights apply to sentencing-related filings).

Where this constitutional right of access applies, the Court should make the judicial records public unless secrecy "is essential to preserve higher values and is narrowly tailored to serve that interest." *Dhiab*, 852 F.3d at 1102 (Williams, J., concurring). The public docket contains no argument by the parties or finding by the Court that the withholding of the Sealed Records is essential to preserve any higher values. Nor are there any public findings that narrowly targeted redactions would not sufficiently protect any such interest. *See In re New York Times Co.*, 585 F. Supp. 2d 83, 91 (D.D.C. 2008) (because restrictions on First Amendment right of access must be narrowly tailored, courts must ask whether "the goal of protecting [higher values] can be accomplished by means less restrictive than prohibiting access . . . altogether"); *see also Dare*, 568 F. Supp. 2d at 245 (ordering a sealing order and a sentencing memorandum be unsealed, with limited redactions to the defendant's personal identifying information within the memorandum).

Because the First Amendment access right applies to the Sealed Records, and there are no findings on the public record demonstrating that blanket withholding is essential to preserving any higher values, the Court should promptly grant the Press Coalition's motion for access.

**B.    The Court Should Release The Records Under The Common Law Right Of Access.**

The Court also should release the Sealed Records pursuant to the common law right of access. "Although [this] right is not absolute, there is a strong presumption in its favor, which

courts must weigh against any competing interests." *Metlife*, 865 F.3d at 663. Like the constitutional right of access, the common law right requires courts to conduct a two-stage analysis. First, courts determine whether the records at issue are "judicial records" to which there is a "strong presumption" in favor of access. *Id.* at 665-67. If they are judicial records, courts then apply the six-factor test set out in *United States v. Hubbard* to determine whether the presumption of access has been rebutted. 650 F.2d 293, 317-21 (D.C. Cir. 1980).

Under controlling case law, the Sealed Records are "judicial records" to which the public has a presumptive right of access under the common law. In *Metlife*, the D.C. Circuit recently explained that documents filed with the court are judicial records, even when they are filed under seal, so long as they "were filed before the . . . court's decision and were intended to influence it." 865 F.3d at 668. Here, the Sealed Records – an Addendum to the Government's Sentencing Memorandum and filings and orders regarding its sealing – clearly were intended to influence the Court in reaching a decision and reflect the Court's decision. The Sealed Records also are therefore "judicial records," and the same "strong presumption" of public access applies.

Because the public has a presumptive right of access to the Sealed Records under the common law, the Court should release them unless the party seeking the sealing rebuts the strong presumption under *Hubbard* and *Metlife*. Again, neither the parties nor the Court have articulated on the record how these factors could outweigh the "strong presumption" of access to the Sealed Records, particularly in a case where the issues and related filings are already public. *See In re Application of Chodiev,* 2021 U.S. Dist. LEXIS 90103, at *27 (D.D.C. Mar. 23, 2021) (recommending unsealing briefs and exhibits in support of a motion as it "seems illogical to maintain the seal over these motions when the underlying filings will be unsealed").

The Court should therefore grant the Press Coalition access to the Sealed Records pursuant to the common law as well.

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court order the Sealed Records unsealed and placed on the public docket.

Dated:  July 26, 2022

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*