```
              BEFORE THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,         .
                                  .   Case Number 21-cr-579
         Plaintiff,               .
                                  .
    vs.                           .
                                  .
BRANDON STRAKA,                   .   August 3, 2022
                                  .   4:12 p.m.
         Defendant.               .
- - - - - - - - - - - - - - - - -


              TRANSCRIPT OF STATUS CONFERENCE
         BEFORE THE HONORABLE DABNEY L. FRIEDRICH
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the United States:       BRITTANY REED, AUSA
                             United States Attorney's Office
                             650 Poydras Street
                             Suite 1600
                             New Orleans, Louisiana 70130

For the Defendant:           BILAL ESSAYLI, ESQ.
                             Essayli & Brown LLP
                             18191 Von Karman Avenue
                             Suite 100
                             Irvine, California 92612




Official Court Reporter:     SARA A. WICK, RPR, CRR
                             United States District Court
                                for the District of Columbia
                             333 Constitution Avenue Northwest
                             Room 4704-B
                             Washington, D.C. 20001
                             202-354-3284


Proceedings recorded by stenotype shorthand.
Transcript produced by computer-aided transcription.
```

1                    P R O C E E D I N G S
2           (All participants present via video conference.)
3           (Defendant not present.)
4           COURTROOM DEPUTY:  Your Honor, we are in Criminal
5    Action 21-579, United States of America versus Brandon Straka.
6        If I can have the parties identify themselves for the
7    record, beginning with the United States.
8           MS. REED:  Good afternoon, Your Honor.  AUSA Brittany
9    Reed on behalf of the United States.
10          THE COURT:  Good afternoon, Ms. Reed.
11          MR. ESSAYLI:  Good afternoon, Your Honor.  Bilal
12   Essayli on behalf of Mr. Brandon Straka.
13          THE COURT:  Good afternoon, Mr. Essayli.
14       Is Mr. Straka a part of this hearing as well?
15          MR. ESSAYLI:  He is not, Your Honor.  He is currently
16   traveling and is unable to log in.
17          THE COURT:  All right.  Well, I trust you will
18   communicate what we talk about here to him?
19          MR. ESSAYLI:  Yes, Your Honor.
20          THE COURT:  Okay.  So we are here for a hearing that
21   the parties requested to address two issues:  First, the Court's
22   order of July 26 and the deadlines set therein and, second, the
23   apparent release of sensitive documents that were previously
24   filed under seal pursuant to sealed motions that the Court
25   granted in December 2021 and January 2022 related to

1  Mr. Straka's cooperation with the government.

2  Let me first address the release of the sensitive
3  documents.  On July 27, counsel in the case informed chambers
4  that sensitive documents that should have remained under seal as
5  a result of the Court's July 26th order, unsealing order in
6  part, on July 27, we learned from counsel that documents that
7  should not have been unsealed had been released to the public on
8  that date, July 27.

9  The Court's order of July 26 had directed the Clerk of
10 Court to unseal only the motions for leave to file documents
11 under seal and the Court's orders allowing the motions and the
12 sensitive attachments to be filed under seal.

13 The July 26th order also directed the parties to address,
14 in light of the passage of time and the Press Coalition's motion
15 for access to all of the sealed documents, whether the sensitive
16 documents contained in the attachments still needed to remain
17 under seal, and I believe the Court gave both parties until
18 August 5 to address that issue.

19 And I understand, as I've noted, that the parties may need
20 more time to respond to that order, and we will address that in
21 a moment.

22 But I want you to know what steps the Court took, because
23 obviously everyone at the court was exceedingly concerned about
24 the release of what should be sealed information at this point.
25 It may not remain that way, but I had fully expected to get

1  responses from counsel before making a determination about
2  whether those documents could be released in full or released in
3  redacted form, and I was awaiting their responses before any
4  actions should have been taken to unseal those sensitive
5  documents.
6  　　　　When I heard this information, I was concerned that the
7  Clerk's Office, which is the entity in the courthouse which is
8  responsible for sealing and unsealing documents on the
9  electronic docket, might have accidentally unsealed the
10 sensitive attachments when it unsealed the motions and related
11 orders pursuant to my July 26th order.
12 　　　　The Clerk's Office has since looked into the matter and has
13 determined that the Clerk's Office did, in fact, accidentally
14 unseal the sensitive attachment when it unsealed the parties'
15 earlier motions to seal.
16 　　　　The public should understand that the unsealing process is
17 a very complicated one, and it's multi-stepped.
18 　　　　Approximately 28 minutes after the mistake was made, the
19 Clerk's Office realized the error and immediately corrected the
20 problem.  So the sensitive attachments are now back under seal
21 on the docket.
22 　　　　Counsel has made the Court aware that there are claims on
23 the Internet that the Press Coalition received a bulk e-mail
24 from the Court with the sealed documents attached.  Now, without
25 more information, the Clerk's Office cannot determine whether

1   this claim is true, because so far as the Clerk's Office can
2   tell, no notice of electronic filing, no NEF, was generated as a
3   result of these actions the Clerk's Office took in response to
4   my July 26th order.
5        So if the parties have any more information that they can
6   share about the alleged bulk e-mail that was supposedly released
7   to the press by the court, the Court would very much like that
8   information.
9        Is that anything that you have, Mr. Essayli or Ms. Reed?
10           MR. ESSAYLI:  I don't have any additional information,
11  Your Honor.  I will say, we didn't conduct an independent
12  investigation.  We didn't interview any of the reporters.  We
13  just are monitoring what's being printed and bringing it to the
14  Court's attention.
15       I appreciate the attention the Court's already given this,
16  and I know that this is a matter that's being taken seriously.
17  So we're happy to continue looking into it.  Of course, any
18  information we discover, we will pass that along.
19           THE COURT:  Okay.  And Ms. Reed, do you have any
20  additional information regarding that allegation that's in the
21  press that counsel brought to the Court's attention?
22           MS. REED:  I do not, Your Honor.  And I would like to
23  say also, thank you so much for providing some of the history as
24  to what happened here.
25       Mr. Essayli and I have been in communication with one

Case 1:21-cr-00579-DLF   Document 61   Filed 05/12/23   Page 6 of 18

6

1   another, and I know that he has spoken with the Clerk's Office
2   and shared some of this information.
3       We do not have any information to support these statements
4   that are being made online about additional documentations that
5   have been released.  I think it goes without saying, there's
6   been a lot of chatter about this online --
7           THE COURT:  And I would like to address that in a
8   moment.  So before I get there, Ms. Reed, I do want to make one
9   other point, and that is, both parties bear responsibility for
10  this problem by unnecessarily putting highly sensitive
11  information on the court's docket that the Court did not need or
12  ask for.  I did not need the kind of detailed information that
13  was contained in both the government's motion to seal with the
14  attachment or the defense's motion to seal, which also had an
15  attachment.  These attachments, for example docket 37 and docket
16  39 that were attached to those motions, contain highly specific
17  information that wasn't necessary, including names of
18  individuals who are under investigation by the government.
19      So while the Court and the Clerk's Office, in particular,
20  deeply regret this mistake, the parties need to exercise due
21  care and not put sensitive information on the docket unless it's
22  asked for by a judge.  I've repeatedly warned the government,
23  not you, Ms. Reed, but this happens a lot.  Sometimes it's on
24  the record in the hearing when the government asks to go under
25  seal rather than conduct a sealed hearing in front of a public

1  hearing.  And for individuals who are cooperating with the
2  government, at times at great risk to their personal safety, I
3  don't understand why the government isn't more careful about
4  what it puts on the docket.  Even a redacted transcript tells in
5  some cases the public, it can be presumed, sometimes correctly
6  and sometimes incorrectly, that a defendant is cooperating.
7       So I think the government bears some responsibility here.
8  I also think the defense bears some responsibility here.
9       It doesn't excuse the mistake.  I'm not pointing fingers.
10 I'm raising it because the parties could have prevented some of
11 the fallout from this inadvertent human error.  And human errors
12 are going to happen any time -- well, even computer errors are
13 going to happen.  So even if we one day have robots, there's no
14 point in putting information about individual people who
15 Mr. Straka was providing information about.  That should have
16 been summarized in a fashion that, you know, the defendant has
17 provided information about X number of individuals who are
18 currently under investigation or being prosecuted, this
19 information is helpful to the government for these reasons.  The
20 government can talk in general terms, and the defense can as
21 well.  And then if a judge wants more information, we can
22 address it then.
23      But I just think there should be a presumption that you
24 don't put this kind of information on the docket unless a judge
25 is asking for specifics.  I think the government has to be

1   careful about this and I think defense counsel, too.  If this
2   had leaked with just he had provided cooperation, it wouldn't be
3   a problem.
4       And just so the public understands, I conducted -- often,
5   when we get a motion to seal with an accompanied attachment,
6   quite often, a court will decide to immediately unseal the
7   motion and direct the clerk to seal the attachment.  But the
8   problem judges face when they're dealing with a defendant who is
9   cooperating is the Court at that time doesn't know whether the
10  fact of the cooperation is known to the outside world.
11      So in this particular case, I didn't direct those motions
12  to be unsealed immediately so that the public knew that there
13  was something under seal on the docket, because I didn't know if
14  Mr. Straka's cooperation needed to be kept quiet.  And in that
15  sealed hearing which I conducted before the sentencing in this
16  matter, both sides told me that it could be public.  And I think
17  that's because someone, and I think it was -- I don't remember
18  whether it was the government or the defense, but one or both
19  had referred to the cooperation in a public filing.  And once
20  that happened, the fact of the cooperation, at least weeks
21  later, was no longer sensitive information.  It was already on
22  the public docket for weeks.
23      And I think, my recollection is, although I haven't
24  reviewed that transcript, is I think it was brought to my
25  attention that all kinds of articles had been written about the

1    cooperation.  So that cat was out of the bag.
2         But otherwise, I would have released -- unsealed the motion
3    to seal so that the public knows there's sealed information on
4    the docket.  But in the case of cooperation, judges are going to
5    be reluctant to do that.
6         The mistake I made was after the sealed hearing when I
7    learned about the publicity surrounding the cooperation, I
8    believe it was mentioned in the sentencing memo, at that point
9    it could have been made public, and that was a mistake on my
10   part.
11        So that's why I immediately unsealed the motion when the
12   Press Coalition filed the motion, because they were correct.
13   The fact of cooperation was on the docket already.
14        That's not to say that every single mistake doesn't justify
15   continued sealing of documents.  In this case, I made a
16   determination that this inadvertent error that lasted for 28
17   minutes, unintentional error, balancing the factors, I
18   determined it still made sense to keep these documents that had
19   been released under seal until I had a chance to receive more
20   information from the parties about whether this is no longer
21   sensitive information.  After all, quite a bit of time has
22   lapsed since then, and perhaps some of these people have been
23   prosecuted, and perhaps there's no need to keep it under seal.
24        But I would have never ordered the Clerk's Office to unseal
25   the attachments without getting input from both sides.  And I'm

1  still awaiting that input.  Again, I know the August 5th
2  deadline may be too soon, given that you had to request a
3  transcript of the sealed hearing, because I'm also going to
4  unseal that hearing in part, if not in full, once I receive your
5  comments about the hearing.
6      So Mr. Essayli, do you need additional time, and Ms. Reed,
7  same question for you?  And if so, let's talk about an
8  appropriate date to have you respond to that order.
9          MR. ESSAYLI:  Your Honor, if I could briefly respond
10 to the Court's comments.
11     The Court is correct, in December before the sentencing,
12 there was a document that was inadvertently filed by the
13 government at the time indicating that the sentencing should be
14 continued to consider information that Mr. Straka had provided
15 the government.  We always believed that that was going to
16 remain confidential.
17     So I think at that point the Court is right, the fact that
18 Mr. Straka had provided some information that might have been
19 useful to the government was made public, but of course --
20         THE COURT:  No, no, no.  Mr. Essayli, again, I haven't
21 reviewed the docket in great detail, but my recollection is yes,
22 the government made that comment, but subsequently, I think the
23 defense referred to, quote, cooperation, I think.
24     Correct me if I'm wrong, Ms. Reed, but I had made the point
25 that information in the January 6 cases in particular doesn't

1  necessarily mean cooperation because every single plea agreement
2  I've seen requires the defendants to sit down with law
3  enforcement agents and provide information.
4      So my recollection is there was some specific reference to
5  cooperation that I thought defense counsel made that made me
6  look at that differently.
7      Am I remembering incorrectly?
8          MS. REED:  Your Honor, you are remembering that
9  correctly, and it was the government's position, just as you
10 stated, that in all of these cases where individuals are
11 pleading guilty, they are expected to provide an interview and
12 sit down and give the government an opportunity to speak to
13 them.  And that does not always equate to cooperation, and that
14 is what was stated on the record.  So Your Honor is correct
15 about that.
16         THE COURT:  Okay.  So again, Mr. Essayli, the defense,
17 two big mistakes here, one referring to cooperation in a public
18 document and two, you know, putting information on the docket,
19 although it was after the government, so we still would have had
20 a problem.  But you all just need to be more careful.  The Court
21 can't, you know, police this when humans are involved.  I make
22 mistakes.  The Clerk's Office makes mistakes.  You all ought to
23 be very careful, because you're much closer to a case, and you
24 know the risks, you know the dangers, and exercise some due
25 caution so that, you know, in the rare instance that the court

1    itself makes a mistake, we don't have the problem that we have
2    here.
3         Following up on that, Mr. Essayli, it's also been brought
4    to my attention that Mr. Straka has been making questionable
5    comments regarding the truth of his plea and the nature of his
6    cooperation.  And I'm wondering, should I be anticipating a
7    motion to withdraw his plea?  Because I want you to know, I
8    would gladly hold an evidentiary hearing to address his claims.
9         Is that something that I should be expecting?
10             MR. ESSAYLI:  No, Your Honor.  He has no intent to
11    withdraw his guilty plea.
12             THE COURT:  All right.  That's hard to reconcile with
13    what has been provided to me regarding his public statements.
14         Secondly, to the extent he's making claims that are
15    inconsistent with what he said to federal agents, he needs to
16    understand that this definitely is not in his best interest.
17    Presumably, federal agents were present, and he needs to
18    understand that he faces exposure for making false statements to
19    federal law enforcement officers.
20         So I suggest that you tell him to exercise some discretion
21    that he didn't show before January 6, during January 6, and
22    apparently after January 6, and also inform him that I will be
23    asking Probation for periodic status reports about his
24    performance on supervision.  So I hope that he will take my
25    prior orders regarding supervised release and the suggestions

1    I'm making here very seriously.
2             MR. ESSAYLI:  Your Honor, I have no reason to believe
3    that Mr. Straka does not take your orders seriously.  In fact,
4    he's exceedingly done his best to comply with all the terms of
5    the Court's orders.
6             THE COURT:  Well, I'm receiving public reports that
7    suggest the contrary.  So to the extent he's the one responsible
8    for generating those public reports, he's potentially
9    incriminating himself for a 1001 charge, and he's managed to
10   generate forthcoming status reports from Probation about his
11   performance on supervision.
12       So please inform him that these are not wise choices he is
13   making.  And I would have thought, based on what he said to me
14   at the time of sentencing, that we would not be having this
15   conversation right now.
16            MR. ESSAYLI:  I will speak with him, Your Honor.
17            THE COURT:  It makes me question every statement he
18   made to me at the time of sentencing, every single one of them.
19   He's losing more and more credibility by the moment.
20            MR. ESSAYLI:  I understand, Your Honor.
21       I just would ask the Court to also appreciate that he is
22   more of a public figure.  He faces a lot of reporting.  A lot of
23   it he views as false reporting or misleading reporting, and it
24   is difficult for him not to respond or be emotional.
25            But I will reiterate --

1              THE COURT:  He can view it as false reporting, but he
2     knows what he said in those debriefings, and he knows he said it
3     to federal agents.  So again, what he needs to appreciate is he
4     is potentially incriminating himself for a 1001 prosecution.
5              MR. ESSAYLI:  I understand, Your Honor.
6              THE COURT:  And if he wants to withdraw his plea
7     because he didn't know anything about what he was doing, then
8     file the motion.  That's the appropriate way to address this,
9     not by putting comments out on the Internet.
10             MR. ESSAYLI:  Yes, Your Honor.
11             THE COURT:  That's the right venue.  And again, I will
12    happily hold an evidentiary hearing and hear his side.
13             MR. ESSAYLI:  Your Honor, I'm sure he does not want to
14    withdraw his plea agreement.
15             THE COURT:  All right.  Well, I expect these
16    reports -- I expect what I hear from these reports to be
17    different in nature than what has been brought to my attention
18    in recent days since his sentencing.
19             MR. ESSAYLI:  I will speak with him, Your Honor.  I'm
20    not aware of all the reporting, but I will reiterate the Court's
21    comments and emphasize those points, Your Honor.
22         One of the questions I had, Your Honor, is which documents
23    were unsealed unintentionally.  It sounds like all of the sealed
24    docket entries that were referred to in the Court's order might
25    have been unsealed.

1         Is that correct?

2              THE COURT:  I will tell you in just a moment.  I wrote
3    down -- okay.  So attachments relating to docket entry 32;
4    docket entry 34 did not have any attachments; docket entry 35
5    did have attachments, and again, this is -- no, that's not the
6    defense.  Document 37 had attachments and document 39, and I
7    think that was the one filed by the defense, I think.  No, it
8    was 34 was filed by the defense.  I don't know.  I might have
9    the numbers wrong.

10        But I think the bottom line is, there was 39-2, I think,
11   was a sealed filing by the defendant that referred to the
12   truthfulness, completeness, and reliability of Mr. Straka's
13   interviews and refers by name to some people he gave information
14   about.

15        So that's what I'm talking about, Mr. Essayli.

16             MR. ESSAYLI:  Thank you, Your Honor.  That is helpful,
17   because that's something that I will be working with government
18   counsel to understand.  These documents had been already
19   disclosed, it sounds like.  The media may have captured them --

20             THE COURT:  Well, I think some media did.  But this is
21   clearly an inadvertent error, not by the parties but by the
22   court.  And I don't think there's authority for -- simply
23   because a document is accidentally released does not necessarily
24   mean it loses its sealed nature.  I have to balance the factors.

25        So that's what I'm looking for you all to address, is the

1  specific factors, the *Hubbard* case, *The Washington Post* case,
2  how over the course of time -- whether there's still a need to
3  keep these under seal.
4      And I don't want anything I say here to suggest that I'm
5  ready to release all of this.  I think a defendant who
6  cooperates should be protected from this sort of public release
7  of information.  I think it does put defendants at risk, and
8  sometimes there's specific risks that are known, and sometimes
9  it's, you know, more general in nature.  But judges and courts
10 generally try to protect defendants who might be subject to
11 retaliation.
12     And I think the press appreciates that when a defendant is
13 cooperating, that that information is not necessarily going to
14 be released.  Over time, it becomes stale, and the risk goes
15 down.
16     So that's what I'm looking for.  If there's really no risk
17 to Mr. Straka that he's articulated, either because it's so
18 pervasive in the press or because you all just don't think it's
19 a problem, then I want to be as open as I can about the docket.
20     But I don't want my frustration about the situation in
21 any way to suggest that I'm ready to unseal everything that's in
22 the attachments.  I just want to minimize the amount that's kept
23 under seal.  No more than necessary should be under seal.
24     Looking at that transcript of the sealed hearing, there was
25 large chunks of that that didn't need to remain under seal, and

```
 1      I should have unsealed it.  We all could do better here.  I
 2      could do better.  The Clerk's Office could do better.  You all
 3      could do better.  And Mr. Straka certainly could do better.
 4              MR. ESSAYLI:  Yes, Your Honor, we can definitely all
 5      do better.
 6         I will say I will defer to Ms. Reed, because I know she's
 7      the one that put the initial order in for the transcript.  I
 8      don't think we've received it yet.  So I'm not sure --
 9              THE COURT:  Here's what I'm going to do.  I'm going to
10      vacate the August 5th date.  Once you have the transcript and
11      you all take a look, file a joint motion proposing a reasonable
12      date that gives you adequate time to address the factors that
13      you need to address.
14              MR. ESSAYLI:  Yes, Your Honor.
15              THE COURT:  And I think *The Washington Post* case deals
16      with motions to seal.  So I think that's not relevant anymore.
17      I think it's just the *Hubbard* factors.  But anyway, you all can
18      take a look, and to the extent you disagree, you know, you don't
19      have to agree on all this.  You can file separate documents, and
20      I will make a decision.  If I need to hold a hearing, I will
21      hold a hearing.
22              MR. ESSAYLI:  Yes, Your Honor.
23              MS. REED:  Yes, Your Honor.
24              THE COURT:  Anything else, Mr. Essayli?
25              MR. ESSAYLI:  No, Your Honor.  Thank you.
```

```
1              THE COURT:  Ms. Reed?
2              MS. REED:  No, Your Honor.
3              THE COURT:  All right.  Thank you, all.
4         (Proceedings adjourned at 4:37 p.m.)
5
6    - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
7
8              CERTIFICATE OF OFFICIAL COURT REPORTER
9
10        I, Sara A. Wick, certify that the foregoing is a
11   correct transcript from the record of proceedings in the
12   above-entitled matter.
13
14        Please Note:  This hearing occurred via telephone or
15   video conference and is, therefore, subject to the
16   technological limitations of court reporting remotely.
17
18
19   /s/ Sara A. Wick                     March 19, 2023
20   SIGNATURE OF COURT REPORTER         DATE
```