UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BRANDON STRAKA,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case No. 1:21-cr-579-DLF<br>)<br>)<br>)<br>)<br>) |

**STRAKA'S MOTION FOR EARLY TERMINATION OF PROBATION PURSUANT TO
18 U.S.C. § 3564(c)**

Brandon Straka, by counsel, pursuant to 18 U.S.C. § 3564(c) and Rule 32.1 of the Federal Rules of Criminal Procedure, respectfully moves the Court for the early termination of his probation period, as such relief comports with the factors set forth in 18 U.S.C. § 3553(a) and is in the interest of justice.

**I.      Background**

**Straka's Class B misdemeanor conviction**. Straka entered a guilty plea on October 6, 2021 to Count 1 of the Superseding Information, charging him with disorderly conduct on the Capitol Grounds, pursuant to 40 U.S.C. § 5104(e)(2)(D). The Statement of Offense stipulated that Straka flew to Washington, D.C., to speak at a rally protesting the 2020 election results on January 5 and January 6, 2021.  ECF 26, p. 3.  On January 6, Straka knowingly entered the restricted area at the U.S. Capitol Grounds. *Id.*, p. 4.  He observed the crowd yelling and U.S. Capitol Police trying to prevent protesters from entering the Capitol and manage the unruly crowd.  Straka engaged in disorderly conduct by yelling "go, go, go" to encourage others to enter the Capitol. *Id.*  He observed others "yelling to take a U.S. Capitol Police Officer's shield.  He recorded a video of what was happening, and in the video, he chimed in with the crowd, saying

1

'take it, take it.'" *Id.* Straka "knew at the time he entered the U.S. Capitol Grounds that [] he did not have permission to enter the Grounds, and the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress." *Id.*

**Straka's sentencing**. On January 24, 2022, the Court sentenced Straka to thirty-six months of probation, including three months of home detention. The Court also imposed a $5,000 fine and a $500 restitution judgment. Amended Judgment, ECF 50. Straka expressed remorse at sentencing. In a letter to the Court, Straka wrote,

> To be clear, Your Honor, I think January 6th is nothing more than an incredibly shameful day that had absolutely no positive attributes whatsoever. Nothing positive was accomplished. . . .I'm sorry that I was present in any way at an event that led people to feel afraid, that caused shame and embarrassment on our country, and that served absolutely no purpose other than to further tear away at the already heartbreaking divide in this country.
>
> I want to apologize to all members of the Capitol Police whose safety was put in danger by the unruly mobs. In particular, the police officer who is seen in my video whose shield was being taken by the crowd. No protest should ever get out of hand to the point of becoming a riot, and no police officer should ever have to feel that their life or their safety is in jeopardy while trying to keep the peace at a public demonstration.
>
> And I want to apologize to every member of Congress, regardless of political affiliation or background. I'm deeply sorry and ashamed for being present at an event that sent members of Congress running in fear to evacuate a building. I can sincerely say that I would never intend for such a thing to happen, but nonetheless, it did. And I was there. And I'm truly sorry for that.

ECF 43, pp. 9-10.

**Straka's probation period**. Straka began three months of home confinement the day after sentencing. He fully complied. Straka completed 60 hours of Court-ordered community service within three months of the sentencing date. He attended Court-ordered mental health counseling sessions promptly after sentencing. And within two weeks of sentencing, Straka fully paid his fine and restitution judgment.

In the 19 months of his probation period, Straka has complied with all his conditions, including required drug tests, and has committed no violations. He has remained gainfully employed at all times, kept all his employees, and managed to expand his team. Over the past year and a half, Straka has traveled regularly for work, just as he did while on pre-trial supervision, without any compliance issues. For over eight and a half years, Straka has remained sober. For all those reasons, Straka's Probation Officer has indicated that she supports early termination. Recently, Straka has been offered work in New York City and will begin the process of living there at least part time for the next few years.

Beyond the 60 hours of Court-ordered community service, Straka led a fundraising effort for two law enforcement charities. He was inspired to do so after coming to terms with his misconduct on January 6. The effort was called Refund the Police. Following sentencing, Straka's group raised nearly $20,000 and donated it to two police charities: the National Police Association and E614. Exh. 1. The latter association announced that Straka's donation would "service around 115 officers."


E614 Corporation
March 22, 2022 at 4:02 PM

We want to give a HUGE thank you to @realwalkaway foundation for doing a fundraiser to "refund the police." We were one out of four charities they chose to share the funds with. Donating just over 9800$!!!! That will service around 115 officers! Amazing work; thank you so much! Check out https://www.walkawayfoundation.org



## II.     Argument

### A.     Standard for early termination of probation

Early termination of probation is governed by 18 U.S.C. § 3564(c) and Rule 32.1 of the Federal Rules of Criminal Procedure.  *E.g.*, *United States v. Ferrell*, 234 F. Supp. 3d 61, 63 (D.D.C. 2017).  Section 3564(c) provides,

> The court, after considering the factors set forth in section 3553(a) to the extent that they are applicable, may, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, terminate a term of probation previously ordered and discharge the defendant at any time in the case of a misdemeanor or an infraction or at any time after the expiration of one year of probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice.

§ 3564(c).

Rule 32.1 provides that the Court must hold a hearing before modifying conditions of probation unless "(A) the person waives the hearing; or (B) the relief sought is favorable to the person and does not extend the term of probation or of supervised release; and (C) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so." Fed. R. Crim. P. 32.1(c).

The section 3553 sentencing factors include: (1) the characteristics of the offense and the defendant; (2) whether the sentence reflects the seriousness of the offense, deters other criminal conduct, protects the public, and rehabilitates the defendant; (3) the other available sentences; (4) the sentences and applicable sentencing range for the defendant's crime; (5) pertinent policy statements provided by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a)(1)-(7).  A court must ensure that the sentence imposed is sufficient, but not greater than necessary, to accomplish the goals of sentencing.  *Id.* § 3553(a).

Although a district court need not provide an explanation of the § 3553 factors "where the reasons for denying the [early termination] motion are apparent from the record," the court should "provide some indication of [its] reasons" where the defendant has presented a substantial argument that changed circumstances render a previously imposed sentence modifiable. *United States v. Mathis-Gardner*, 783 F.3d 1286, 1289-90, 414 U.S. App. D.C. 423 (D.C. Cir. 2015).

**B.     Early termination is consistent with the § 3553 factors and is in the interest of justice**

In the probation and supervised release contexts, early termination motions have been granted where the defendant is "fully compliant with the terms of [their] supervision" and where the defendant "has taken considerable strides in reintegrating into [their] community through employment [or] service to [their] family." *United States v. Erskine*, No. 05 Cr. 1234 (DC), 2021 U.S. Dist. LEXIS 426, 2021 WL 861270, at *2 (S.D.N.Y. Mar. 8, 2021); *United States v. Callahan*, No. 08 Cr. 349 (JGK), 2018 U.S. Dist. LEXIS 93541, 2018 WL 2947968, at *1 (S.D.N.Y. June 1, 2018) (same).  A defendant's "exceptionally good behavior" is one example of changed circumstances that warrant modification of probation or supervised release. *United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000).  While it is true that a defendant's mere compliance with probation/supervised release conditions is a necessary but generally not sufficient condition, a defendant's engagement in "charitable endeavors . . .distinguish[es] [his or her] case from other requests for early termination. . ." *United States v. Hilton*, No. Cr. 13-172 (PJH), 2014 U.S. Dist. LEXIS 103122, at *6 (N.D. Cal. July 28, 2014).

Here, there is no dispute that Straka has been in full compliance with all his probation conditions for 19 months.  His Probation Officer has indicated that she supports his request for early termination.

Beyond compliance, Straka has engaged in "charitable endeavors [that] distinguish [his] case from other requests for early termination." *Hilton*, 2014 U.S. Dist. LEXIS 103122, at *6. Namely, he has raised and (post-sentencing) donated nearly $20,000 to law enforcement charities, funds that will benefit hundreds of police officers. Exh. 1. That is far from the normal post-conviction activity of a defendant. Moreover, early termination would reduce costs to the government. Since Straka has begun relocating to New York, he must be supervised by the Probation Office in multiple jurisdictions. And on account of his busy travel schedule for work, Straka's Probation Officer has been put in the position of constantly approving his travel requests and coordinating with other Probation Offices. Early termination would cut these expenses.

As to the § 3553 factors, early termination would not undercut the Court's judgment regarding deterrence, the seriousness of the offense and avoiding unwarranted sentence disparities. His case has turned Straka's life upside down. He has been vilified in the press. Family and friends have shunned him. His liberty was significantly restricted in months of home detention. His resources have been drained to cover legal fees and expenses, not just in this case but as a result of being sued in parallel civil lawsuits. He has expressed clear remorse to the Court. No evidence suggests that Straka has not been sufficiently deterred by his punishment and these unforgiving social realities.

The case may be even stronger in connection with unwarranted sentence disparities. As the Court knows, while hundreds of January 6 protesters have been convicted of a Title 40 offense like parading, very few of them fall into a cohort with Straka that meets these two criteria: (1) the protester did not enter the Capitol Building and (2) is not charged with any other offense. That is because it is settled law in this circuit that Title 40's parading/demonstrating offense is facially invalid under the First Amendment as to the Capitol Grounds (as opposed to

6

the Capitol Building. *See* 40 U.S.C. § 5104(f)(1).). *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 584 (D.D.C.) (three-judge panel), *aff'd mem.*, 409 U.S. 972 (1972). To be sure, Straka did not plead guilty to merely parading and demonstrating in the Capitol Grounds but to engaging in disorderly or disruptive conduct there. The *Jeannette Rankin Brigade* court explicitly saved that subsection of the Title 40 statute. *Id.* at 587-88. Nevertheless, that precedent accounts for why the charging set that includes Straka is rather thin. Hundreds of protesters who remained outside the building and who did not engage in felony conduct have gone uncharged and apparently will remain so. On that point alone, it would not create an unwarranted sentence disparity to terminate probation early.

In another sense, too, terminating Straka's probation early would not create unwarranted sentence disparities. Even if the Court were to compare Straka's case with more severe (and typical) Title 40 cases involving protesters who entered the Capitol Building, early termination would not be unusual. That is because more than half of sentenced Title 40 defendants have not received home detention sentences like Straka. Government's January 6 Sentencing Chart, dated June 22, 2023, available at: https://www.justice.gov/file/1588321/download. And among those misdemeanants who received home detention, it appears that fewer than a third were sentenced to three months' detention like Straka. The rest received less detention time. *Id.*

For all these reasons, Straka respectfully requests that the Court terminate his probation period.

Dated: August 9, 2023　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Nicholas D. Smith*
　　　　　　　　　　　　　　　　　　　　Nicholas D. Smith (D.C. Bar No. 1029802)
　　　　　　　　　　　　　　　　　　　　1123 Broadway, Suite 909
　　　　　　　　　　　　　　　　　　　　New York, NY 10010
　　　　　　　　　　　　　　　　　　　　Phone: (917) 902-3869

nds@davidbsmithpllc.com

*Counsel to Straka*

**Certificate of Service**

I hereby certify that on the 9th day of August, 2023, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com